Rogers, J. "
Tbe petition seeks to enjoin the consolidation of two corporations, not for profit, organized under the laws of this state. The plaintiffs are members, and two of them are trustees, of one of such corporations, namely, the Women’s Educational and Industrial Union, and the natural defendants are members of the *50 board of trustees of the Women’s Educational and Industrial Union, and the Young Women’s Christian Association, the other corporation involved in this controversy. The ease is now heard upon the application of the plaintiffs for a temporary injunction upon the petition to prevent the alleged threatened consolidation until a final hearing of the case upon the merits. This application is resisted by the defendants, which includes the natural persons above named and the two corporations.
.At the September term, 1909, of this court, before his honor, Judge Dillon, upon a full hearing, the right of the two corporations in question to consolidate pursuant to the steps then taken by them, respectively, was decided adversely to the defendant corporations on the ground that the prerequisite agreement for such consolidation was not entered into by the board of trustees of the Women’s Educational and Industrial Union, pursuant to the statutes governing such consolidation. However, many of the questions involved in this case were tried out in the former case, and, while not necessary to a decision by the court, were, in the opinion of the learned judge, elaborated upon for the future guidance of the corporations. While such opinion is not binding in the decision of this case, after a careful review of the opinion, I am convinced that the opinion upon the questions other than the one decisive of the case is founded upon proper reason, and I am persuaded to follow it. Thus, much of the work on this application is made easy by the opinion of the court heretofore given upon the same questions.
Objection is made to the consolidation under the statute on the ground that neither of said corporations is a benevolent or a charitable association. This question was decided by his honor, Judge Dillon, adversely to the plaintiffs in the former trial, and I am satisfied that the petition itself shows that both of these organizations come under the head of benevolent institutions. The petition shows that both corporations are not for profit; that the Women’s Educational and Industrial Union was formed for the educational and industrial advancement of working women and girls, members of said association; that by its constitution adopted in January, 1910, its declared purpose is to promote the temporal, mental and spiritual welfare *51 of young women; that the Young Women’s Christian Association was formed for the promotion of the spiritual, intellectual, social and physical development of young women; that by its constitution its declared purpose is to promote the temporal, mental and spiritual welfare of young women; that the Women’s Educational and Industrial Union has a boarding and lodging house for women and girls, and nurseries in which, for a small consideration, both white and colored children of mothers who are engaged in daily work are kept while the mothers are so engaged; that the Young Women’s Christian Association occupies a part of a building of the other corporation where religious and other related work is conducted; that large donations have been made by philanthropic persons to carry on the work of the AVomen’s Educational and Industrial Union, and that the future purpose of the proposed consolidated corporation, as shown by the agreement 'entered into between them, is to continue to do and perform the moral, benevolent work, duties and obligations undertaken and performed therefore by the respective corporations.
Benevolence does not merely consist in feeding the hungry and clothing the poor. It has a broader significance where the religious and moral needs of humanity are involved. Without going into a detailed discussion of what a benevolent society is, I am satisfied that whatever organization has for its main purpose the leading of a hand to promote the spiritual, intellectual, and moral uplift of others, whether it be its members, without pecuniary reward to the society or its promoters, is a benevolent organization, and certainly these two organizations come within that definition, and the connection that they do not come within' the statute, in my opinion, is not sound.
It is also contended that the different methods pursued by these two corporations militate against the right of consolidation. The statute only requires that they should be benevolent or charitable organizations to entitle them to the right of amalgamation, however diverse their methods of work may be.
A further reason is urged that certain donations have been given with certain conditions of reverter, and that by the consolidation certain gifts will be lost to the united body. This is *52 no ground’ for equitable interference. It may be a question of expediency as to whether the societies should consolidate and thereby jeopardize any prior gifts which may be subject to a condition of reverter, but it is no legal ground of objection in the face of the statutory right of consolidation of two or more organizations of the kind specified in the statute.
A further ground of objection is that the consolidation statutes were enacted subsequent to the organization of the corporations in question, and, therefore, can not be made to apply to the consolidation of the prior incorporated associations on the ground that the statute would thus be retroactive and impair the obligations of contracts with third persons made prior to the enactment of the consolidation statutes, referring especially to two parcels of real estate. In the absence of a reservation in the Constitution of our state allowing the Legislature to alter, revoke, or repeal any grant of special privileges or immunities, plaintiffs’ contention would appear more plausible. But in Article XIII, Section 2, of the Constitution of this state, it is provided:
“That corporations may be formed under general laws; but all such may be, from time to time, altered or repealed. ’ ’
And in Article I, Section 2, it is provided:
‘ ‘ That no special privileges or immunities shall ever be granted that may not be altered, revoked, or repealed, by the General Assembly. ’ ’
There being the reservations in the Constitution of the state, just quoted, allowing the Legislature to alter, revoke, or annul, the privileges and immunities granted these societies when they were chartered, respectively, they accepted them subject to the right of the Legislature at any time to enact a statute of consolidation whereby their rights might be altered or changed, and when such consolidation statutes were enacted it in nowise impaired the obligations of the contract either represented by the charter or as represented in agreements with third persons. See on this subject Jefferson College v. Washington & Jef. Col., 80 U. S. (13 Wall.), 190, affirming Houston v. Jefferson Col., 36 Pa. St., 428.
*53 The power on the part of the Legislature to alter the statutes relating to corporations was reserved in the Constitution at the time these charters were issued, and when the eorporations came into existence, this power authorized the Legislature by statute, after the corporations had been formed, to provide for the consolidation of the corporations by consent of less than the whole number of members. (See on this subject 10 Cyc., 298, and cases, where the subject is discussed with reference to corporations for profit.) The consolidation statute, therefore, is neither retroactive nor in the impairment of contracts, and is constitutional, even though the charters of these two eorporations were granted prior to the enactment of the consolidation statutes.
Moreover, plaintiffs complained that the proceeding is violative of the “due process” clause of the United States Constitution. I have hunted in vain for any facts in the petition to sustain plaintiffs’ contention. The consolidation does not deprive the plaintiffs of anything which they formerly possessed. The union of the two associations contemplates, according to the agreement, that they shall continue to do and perform the same work, and be subject to the same duties and obligations as heretofore. No impairment, of any rights is proposed by the consolidation, but, on the contrary, the new organization is to carry on the same work as conducted by the two former organizations, apparently without any change and without depriving anyone interested in either organization of any right or privilege that she theretofore possessed. This plainly appears from the petition. If the consolidation does not effect a material change in the organization and design of the associations as originally projected— a matter which their proposed agreement affirmatively shows— I am unable to see how the property rights of the plaintiffs can be said to be affected without “due process.” Besides, the proposed consolidation is admittedly to be conducted in pursuance to the statute which provides, among other things, that all the members shall have notice of the proposed consolidation, and of the meetings to effectuate such object. Certainly it is due process to give the statutory notice to every member of the proposed union, so that she may exercise her right to vote for or against the same. If the requisite two-third vote in favor of the union, *54 and the other subsequent proceedings are carried out the consolidation'will result, otherwise it will fail. There is nothing, as it appears to me, in the proceeding violative of the due “process clause,” even though the property rights of both are by virtue of the fulfillment of the statute vested in a corporation.
While plaintiffs conclude that the proceeding of these two organizations will operate as a seizure, appropriation and conversion of the property of the Women’s Educational and Industrial Union to-the use-and benefit of the Young Women’s Christian Association, the facts as shown in the petition contradict such a notion. The new organization, while it takes the name of the Young Women’s Christian Association, centralizes- the work of both organizations in the one new organization to be conducted the same as heretofore. Instead of a seizure or a conversion of the property of the one for the benefit of the other, it is the consolidation of the .property of both in one united organization to carry on the work of both prior organizations. It may as weE be said that the Young Women’s Christian Association is swallowed up by the Women’s Educational and Industrial Union as to make the converse statement. The fact is, that no such thing is to occur as shown by the petition,- but the proceeding is to amalgamate the forces of both organizations into one, and thus concentrate their strength for the fulfillment of the objects for which both organizations were originally projected.
The contention that the Young Women’s Christian Association is not such a corporation as can administer trusts such as are involved in the charter of ‘the other association is without force in the face of the fact that all the rights and duties of the Women’s Educational and Industrial Union are to be carried into the new organization, and even if the Young Women’s Christian Association formerly had not the capacity to operate the trusts in question, the new organization which takes over all the rights and privileges of the Women’s Educational and Industrial Union takes over the capacity to administer, carry on, and operate such trusts.
Much is said in the petition concerning the conspiracy and fraudulent design of members to wrest fr-om the members of the Women’s Educational and Industrial Union its property, and *55 turn it over to the Young Women’s Christian Association; but when the facts, as to what is to be done by the two organizations, are gleaned from the petition, the notion of conspiracy and fraudulent design disappears. The facts of (the petition contradict or rather refute the idea of conspiracy or fraudulent design, and, on the contrary, show a plan or scheme of consolidation without any illegal or inequitable features attached to the proceeding.
It is further alleged in the petition that the Women’s Educational and Industrial Union are diverting certain of its funds in the way of property, and surrendering and abandoning them to another organization, not a defendant herein, in contravention of its charter, and that the proposed united organization intend to ratify and approve the abandonment and surrender of said properties. This being so, I am of opinion that the defendants, so far as they intend to ratify the abandonment and surrender of any of these properties belonging to the Women’s Educational and Industrial Union to another corporation, should be enjoined, and an order may be so drawn upon the plaintiffs executing a bond in the sum of $100. In all other respects I am of opinion that the temporary injunction applied for should be refused, and it is so ordered.
The court is not unmindful that there are connected with the Women’s Educational and Industrial Union good women of high character who have mothered this institution from its infancy, and have grave fears that it will lose its usefulness by the consolidation. The court has not looked beyond the petition to determine what the members of the societies are and have been doing in the promotion of the various objects contemplated by the societies. However, from the petition itself, the court is satisfied, omitting those conclusions concerning fraud, conspiracy and the like, and adhering to the issuable facts as set forth-in the petition, that there is no proposed change by the consolidation in the former work of the Women’s Educational and Industrial Union; but that it is intended to perform a broader and more' effective work by the consolidation of the two societies under one head than could have been accomplished by each of the societies working singly. These good women who are op *56 posed to the union should dispel the thought of irretrievable loss to the Women’s Educational and Industrial Union of its usefulness, and be reconciled to the view that the proposed new organization, if accomplished, will be the means of projecting more effectively the original designs and purposes of the Women’s Educational and Industrial Union.