THE STATE and another, Appellants, vs. THOMPSON and others, Respondents.

*May 14—May 31, 1913.*

*Taxation: Inheritance: Gifts made "in contemplation of death:" Statute construed: Evidence: Burden of proof: Appeal: Affirmance.*

1. In an action to determine the amount of an inheritance tax the burden is upon the state to prove that gifts made by the deceased in his lifetime were made in contemplation of death.

2. Where, in such a case, the facts are practically undisputed, if the evidence fairly justifies the inferences drawn therefrom by the trial court its decision must be affirmed on appeal.

3. The facts that gifts made by an aged man to his only daughter and her husband within a period of seven years prior to his death were substantially in accordance with a will he had made shortly prior to the first of such gifts; that they included more than two thirds of a large estate; and that he had surrendered the management of his property and business to his son-in-law, are not very significant upon the question whether such gifts were made in contemplation of death, since they were a perfectly natural disposition to make of his estate and were equally as consistent with a desire to see his daughter and family enjoy the fruits of his accumulation and to observe the use they made thereof during his lifetime.

4. An act is not done "in contemplation of death" within the meaning of the statute relating to inheritance taxes, when the feeling that dissolution is approaching is absent and is not the cause which impels or prompts the doing of the act. Hence gifts made to a child by an aged parent, sound in body and mind, cannot be subjected to the tax merely because the donor had reached an unusually advanced age.

5. The words of the statute were intended to refer to an expectation of death which arises from such a bodily or mental condition as prompts persons to dispose of their property and bestow it upon those whom they regard as entitled to their bounty; and gifts are made "in contemplation of death" only when the donor is looking forward to his death *as impending,* and in view of that event.

SIEBECKER, J., dissents.

APPEAL from a judgment of the circuit court for Milwaukee county: LAWRENCE W. HALSEY, Circuit Judge. *Affirmed.*

This is an appeal from a judgment determining the amount of inheritance tax payable by the estate of Joseph Dessert, deceased. The county court determined that the value of the estate, including gifts made in contemplation of death, was $711,404.62; that the clear value of the estate at the time of Mr. Dessert's death was $709,704.12; and that the amount of inheritance tax payable thereon was $17,208.12. The executors appealed from this determination to the circuit court. By agreement of the parties the appeal was heard on the evidence taken in the county court. The circuit court reversed the determination made by the county court and made findings of fact and conclusions of law, of which the following is an epitome:

The deceased at the time of his death in December, 1910, was ninety-two years of age. He made his will April 2, 1891, which will provided for certain specific bequests aggregating $7,700, and devised and bequeathed the remainder of his estate to *Stella D. Thompson,* the only child of the testator. The property which she took under the will, after the payment of administration expenses, was of the appraised value of $207,341.37. Prior to 1904 the deceased was actively engaged in the lumber business at Mosinee for many years. In the spring of that year he removed to Milwaukee and ceased to take an active interest in his business, the same being thereafter attended to by his son-in-law, *Henry M. Thompson.* The deceased made his home with his daughter the last twenty-two years of his life, during which time he did not contribute anything towards the maintenance of the household or pay anything for the accommodations which he received there. For more than ten years prior to September 10, 1910, he was in continuous good health and his mental faculties were in no way impaired. His physical and mental condition during this period was unusual for a man of his age and there is no evidence of any condition, except age, which sug-

gests that he had any reason to believe or suspect at any time prior to a few days before his death that death might be imminent or impending. The deceased maintained an active interest in things generally until the first part of September, 1910, at which time he was overtaken with a seemingly slight indisposition which marked a change in his condition and after which he gradually declined until he died, having acute symptoms for only a few days prior to his death. During his lifetime the testator made gifts to *Stella D. Thompson* and to her husband as follows:

| | |
|---|---:|
| July 6, 1903. To Mr. Thompson, cash.................. | $6,500 00 |
| Dec. 25, 1905. To Mr. Thompson, 75 shares of stock Elkhorn Lbr. Co., face value $7,500, actual value .............................. | 15,000 00 |
| Dec. 25, 1905. To Mrs. Stella D. Thompson, 75 shares of stock Elkhorn Lbr. Co., par value $7,500, actual value ...................... | 15,000 00 |
| July 1, 1906. To Mrs. Thompson, securities of the value of .................................... | 229,971 29 |
| Feb. 11, 1907. To Mr. Thompson, cash.................. | 5,000 00 |
| Feb. 24, 1907. To Mr. Thompson, cash.................. | 7,100 00 |
| Dec. 25, 1907. To Mrs. Thompson, stock of Dessert Redwood Co., 813 shares, par value $81,300, actual value ......................... | 175,852 00 |
| Feb. 21, 1908. To Mr. Thompson, cash.................. | 6,000 00 |
| June 5, 1909. To Mr. Thompson, cash.................. | 4,000 00 |
| Nov. 27, 1909. To Mrs. Thompson, cash................. | 12,000 00 |
| Oct. 26, 1910. To Mrs. Thompson, cash................. | 12,000 00 |
| Dec. 14, 1910. To Mrs. Thompson, cash................. | 6,000 00 |
| Total amount of gifts prior to death.............. | $494,423 29 |

The gifts made as of December 25, 1905 and 1907, were declared to be Christmas presents at the time they were made. The stocks were actually transferred on the books of the corporation two days later. As soon as the gifts of the securities were made they were turned over to *Mrs. Thompson,* and deceased never received, either directly or indirectly, any profit or advantage therefrom or exercised any control over them. The same is true in reference to the corporation stocks. None of the transfers of the property of the deceased were made in contemplation of the death of the donor,

nor were they intended to take effect in possession or enjoyment at or after such death, except as to the gifts of October 26th and December 14th, aggregating $18,000, in reference to which no contention was made by the appellants. In determining the value of the estate of the deceased and the amount thereof and of the property transferred by the deceased prior to his death, the transfers of which are subject to an inheritance tax, the sum of $476,423.29 in gifts should be excluded, and the transfers of the property which was the subject of said gifts are not subject to any transfer tax under the laws of Wisconsin, except the two items amounting to $18,000 above referred to.

As a conclusion of law the court found that the appellants were entitled to judgment, and that the value of the estate of the deceased for the purpose of determining the inheritance tax thereon is $234,741.87, and further adjudged that the clear value of said estate as of the date of the death of the testator, after proper deductions, is $233,041.37; that the transfers of gifts, legacies, and devises aggregating $225,341.37 to *Stella D. Thompson* are subject to the payment of an inheritance tax. The amount of such tax was adjudged to be $4,723.54 instead of $17,208.12 found by the county court.

From this judgment the *State of Wisconsin* and the *County of Milwaukee* prosecute this appeal.

For the appellants there was a brief by the *Attorney General, Walter Drew,* deputy attorney general, *Edward Yockey,* district attorney of Milwaukee county, and *John Harrington,* of counsel, and oral argument by *Mr. Drew* and *Mr. Harrington.* They cited, among other cases, *State v. Pabst,* 139 Wis. 561, 121 N. W. 351; *Matter of Palmer,* 117 App. Div. 360, 102 N. Y. Supp. 236; *Rosenthal v. People,* 211 Ill. 306, 71 N. E. 1121; *Estate of Merrifield v. People,* 212 Ill. 400, 72 N. E. 447; *Estate of Benton,* 234

Ill. 366, 84 N. E. 1026; *Matter of Loewi,* 75 Misc. 57, 134 N. Y. Supp. 679; *In re Price's Estate,* 62 Misc. 149, 116 N. Y. Supp. 283; *State v. Bullen,* 143 Wis. 512, 128 N. W. 109.

*Lawrence A. Olwell,* for the respondents, contended, *inter alia,* that the question whether the gifts under consideration were made in contemplation of death is a question of fact on which the finding of the trial court is final. *People v. Kelley,* 218 Ill. 509, 75 N. E. 1038; *Matter of Bullard,* 76 App. Div. 207, 78 N. Y. Supp. 491, affirming 37 Misc. 663, 76 N. Y. Supp. 309; *Matter of Thorne,* 162 N. Y. 238, 56 N. E. 625, 44 App. Div. 8, 60 N. Y. Supp. 419; *Keilly v. Severson,* 149 Wis. 251, 254, 135 N. W. 875; *Hubbard v. Ferry,* 141 Wis. 17, 20, 123 N. W. 142; *Kola L. Co. v. Stoughton W. Co.* 143 Wis. 329, 127 N. W. 974; *Spuhr v. Kolb,* 111 Wis. 119, 86 N. W. 562; *Hoff v. Hackett,* 148 Wis. 32, 134 N. W. 132. The state has the burden of proof. *Matter of Thorne,* 44 App. Div. 8, 60 N. Y. Supp. 419; *Matter of Bronson,* 150 N. Y. 1, 44 N. E. 707; *Matter of Enston,* 113 N. Y. 174, 21 N. E. 87; *Matter of Vassar,* 127 N. Y. 1, 27 N. E. 394; *Billings v. People,* 189 Ill. 472, 59 N. E. 798. Our statute was adopted from New York and the construction there placed upon it must govern here. *Matter of Baker,* 178 N. Y. 575, 70 N. E. 1094; *Matter of Spaulding,* 49 App. Div. 541, 63 N. Y. Supp. 694, affirmed 163 N. Y. 607, 57 N. E. 1124; *Matter of Mahlstedt,* 67 App. Div. 176, 73 N. Y. Supp. 818. See, also, *People v. Burkhalter,* 247 Ill. 600, 93 N. E. 379; *People v. Kelley,* 218 Ill. 509, 75 N. E. 1038; *Matter of Bullard,* 76 App. Div. 207, 78 N. Y. Supp. 491; *Matter of Baker,* 83 App. Div. 530, 82 N. Y. Supp. 390; *In re Graves's Estate,* 52 Misc. 433, 103 N. Y. Supp. 571.

BARNES, J. There is no serious dispute on the facts in this case. The burden of proof was upon the plaintiff to

show that the gifts were made in contemplation of death. The only substantial question in the case is whether the circuit court was warranted in drawing the inferences which it did from the testimony. If the evidence fairly justified the drawing of such inferences, the decision of the lower court must be affirmed. *Kola L. Co. v. Stoughton W. Co.* 143 Wis. 329, 127 N. W. 974.

It is undisputed that the deceased was active and healthy in mind and body until about three months before he died. The first large gift was made four and one-half years prior to his death, and the second a few days less than three years before death. All of the gifts were made to his daughter and her husband. Deceased had made his home with his daughter for twenty-two years before he died.

The contention of the appellants is that the gifts were made in contemplation of death and were in the nature of a final distribution of the estate and are therefore subject to the inheritance tax. The following reasons are urged in support of this contention: (1) The gifts were substantially in accordance with the will of the deceased, made in 1891. (2) They included more than two thirds of a large estate. (3) The deceased had reached an extreme old age. (4) He had surrendered the management of his property and business.

The first, second, and fourth reasons assigned are not very significant. The will gave practically all of the estate to the daughter. As she was his only child, this was a perfectly natural disposition to make of it. If he desired to make substantial gifts, naturally they would be made to her. It is true she would receive the property under the will if the gifts had not been made. She would also receive the estate if no will had been made. These facts do not argue that the gifts were made in contemplation of death, as that term is used in the statute. The daughter was a woman of mature years when the first large gift was made. Her age

is not given, but she had been married eighteen years at the time. Men like the deceased who start with nothing and accumulate large fortunes are naturally desirous that they be neither squandered nor dissipated by their heirs. As hardheaded men of affairs they appreciate that it is ordinarily undesirable that any considerable sums of money should come into the hands of their children until they have had time to acquire the wisdom and experience which will enable them to take care of it. They appreciate the further fact that it is ordinarily undesirable that large fortunes be placed within their control at one time. If a part only is given and it is prudently handled, then the capacity for handling more is shown. If it is unwisely handled there is still an opportunity to profit by former mistakes when other sums are forthcoming and before it is too late. It is for these reasons that trust estates are created so that large properties cannot be manipulated by those who have not acquired the maturity of character or business ability to manage them. We apprehend that one of the substantial pleasures in the life of an aged person is to observe the objects of his bounty make a judicious use of what has been bestowed on them. When the first substantial gift was made to *Mrs. Thompson* the deceased still had left an estate of over $400,000. The next large gift was made a year and a half later. In the meantime the deceased had an opportunity to observe whether or not the daughter and her husband had the necessary capacity to handle the estate. At the time of his death the testator still had left an estate of over $217,000, or a sum large enough so that the income therefrom would greatly exceed his wants. It is also somewhat significant that the first of the two large gifts referred to was made about two years after the plaintiff had intrusted his son-in-law with the active management of his affairs and had had an opportunity to become fully acquainted with his business

capacity. Leaving out of consideration the question of old age, there is nothing in the case that distinguishes it from any other where a parent during his lifetime gives a large portion of his estate to his children. This practice is not uncommon. Men who have built up a substantial business and acquired a competence through their thrift and business capacity frequently desire to be relieved from the cares and worries of their business as they become aged, and they turn the same over to their sons. Farmers frequently dispose of their farms in the same way. The real question is whether a gift made to a child by an aged parent sound in mind and body is subject to an inheritance tax because the donor was advanced in years when the gift was made. If this question is answered in the negative, the further question arises: Should the instant case be taken out of the operation of the general rule because of the unusual age which Mr. Dessert had attained when the gifts were made?

The material part of the inheritance tax statute, sec. 1087—1, is as follows:

"A tax shall be and is hereby imposed upon any transfer of property, real, personal or mixed, or any interest therein, or income therefrom in trust or otherwise, to any person . . . in the following cases:

"(1) When the transfer is by will or by intestate laws of this state from any person dying possessed of the property while a resident of this state.

"(2) . . .

"(3) When the transfer is of property made by a resident . . . by deed, grant, bargain, sale or gift, made in contemplation of death of the grantor, vendor or donor, or intended to take effect in possession or enjoyment at or after such death."

An act is not done in contemplation of death when the feeling that dissolution is approaching is absent and is not the cause which impels or prompts the doing of the act.

An aged person in good health who has acquired a competency and who desires to retire from active life may desire to distribute a portion of his accumulations among his children without any thought of impending death. He may derive genuine enjoyment from seeing them enjoy the fruits of his accumulations if they put them to good use, and may take pleasure in giving his advice or counsel as to how the business or property turned over should be managed or handled. The question of whether such a person may have a few years or many years to live is not a consideration that has entered into or affected the transaction. He does not give because he is anticipating death, but because it affords him a pleasure in life.

It was held in *State v. Pabst,* 139 Wis. 561, 121 N. W. 351, that the words "in contemplation of death" as used in the statute quoted were *"not used as referring to that expectation of death generally entertained by every person."* Speaking affirmatively the opinion proceeds: "The words are evidently intended to refer to an expectation of death *which arises from such a bodily or mental condition as prompts persons to dispose of their property* and bestow it on those whom they regard as entitled to their bounty." In further explanation of the phrase it is said: "A gift is made in contemplation of an event when it is made in expectation of that event and having it in view, and a gift made when the donor is looking forward to his death *as impending, and in view of that event,* is within the language of the statute." In that case the circuit court held that the gifts made by Captain Pabst were subject to the inheritance tax principally because he was suffering from a serious if not a necessarily fatal disease at the time the gifts were made, which ultimately produced death; and this court affirmed the judgment. The definition of the words "in contemplation of death" given in the *Pabst Case* does not differ from that announced by the

New York court in *Matter of Baker,* 83 App. Div. 530, 82
N. Y. Supp. 390 (affirmed 178 N. Y. 575, 70 N. E. 1094),
where it is said:

"This court has held that the words *in contemplation of
death* do not refer to that general expectation which every
mortal entertains, but rather to the apprehension which arises
from some existing condition of body or some impending
peril."

Neither does it differ from the interpretation put upon
the words by the Illinois court in *People v. Burkhalter,* 247
Ill. 600, 604, 93 N. E. 379, where it held that contempla-
tion of death must be the impelling motive for making the
gift in order that it be subject to an inheritance tax.

It is only gifts made in contemplation of death that are
taxable. A parent has the right to give his property to any
proper subject for his bounty, freed from any transfer tax,
provided the contemplation of death is not the cause which
impels the making of the donation.

It is apparent, therefore, that it would be illogical to hold
that proof that a person was aged when he made a gift con-
clusively establishes that it was made in contemplation of
death. This could not be true if the donor might be actuated
by any other motive. Common knowledge and experience
teach us that aged people frequently give property to their
children because of their desire to help them, and without
any thought in reference to their own deaths. Mr. Carnegie
is an old man in years. He has given away what would make
several princely fortunes. It could not be fairly said that
the feeling that he must soon die was the cause that actuated
him to give. Instead, it was the pleasure of bestowing a part
of his fortune where he conceived it would accomplish much
for the uplift and betterment of mankind by furnishing use-
ful and healthful reading matter free of charge.

This brings us to the last question in the case, and that

is whether the age of Mr. Dessert was so great when the gifts in question were made as to establish the fact that they were made in contemplation of death. If there is room for conflicting inferences, the decision of the circuit court must stand. The deceased was eighty-six years old when he made the first of the large gifts and a year and a half older when the second one was made. He died at the age of ninety-two, being sound and active in mind and body until three months before his death. The evidence all tended to show that his physical and mental faculties remained unimpaired until his last illness, except that he was somewhat deaf.

We do not think the court can fix any particular age limit and say that after it is reached a party can give his property away only in contemplation of death. In a sense, old age is a relative term. Some men are old at sixty, although they may have no organic disease. Others are vigorous in mind and body at seventy, and still others long after they have passed their eightieth milestone. There are octogenarians among the members of the Dane county bar at the present time. One is as actively engaged in his professional work as he was twenty-five years ago. Another is creditably administering the affairs of an important office. The third is retired from active labor. Chief Justice FULLER performed his arduous labors until he reached the age of seventy-seven. Justice HARLAN did likewise until he was seventy-eight; Justice FIELD until he was eighty-three; and Chief Justice TANEY until he was past eighty-seven. The venerable ex-Chief Justice LYON of this court recently died at the age of ninety-one, retaining his bodily and mental vigor until a short time before his death. Ex-Speaker Cannon, now past seventy-seven, is an antagonist who might well command both fear and respect in any forensic encounter in which he might see fit to engage.

Age in itself is not a very important factor in determining the capacity of persons to deal with their property or in

ascertaining the motives which actuated them in disposing of it. The deceased in this case might have made the gifts which he did because he expected to die at any time. But it was just as reasonable an inference for the trial court to draw that he made the gifts without any particular thought of death and because he wanted his daughter and her family to enjoy the benefits of a part of his accumulations and to see her and them use what was given while he was still alive so that he could observe the uses to which it was put. It is an erroneous concept to conclude that aged persons dispose of their property because they think that death is staring them in the face. The hypochondriac or the pessimist might entertain such an idea, but such a one rarely attains old age. On the contrary, we think it is true that persons who have lived long and who are free from disease generally entertain the feeling that they have a few years longer to live no matter how old they are and that they do not regard death as imminent. We are not disposed to say in the instant case that the circuit court did not draw an entirely correct inference from the testimony, much less to say that its decision should be set aside.

*By the Court.*—The judgment of the circuit court is affirmed. Inasmuch as the *State* is the principal party appellant in interest, no costs will be allowed, except that appellants must pay the clerk's fees in this court.

SIEBECKER, J. (*dissenting*). I cannot concur in the affirmance of the judgment of the circuit court. It seems clear to me that the property, amounting to the sum of $494,423.29, which decedent transferred as gifts to his daughter and her husband at the times designated in the statement of facts by the court, is subject to an inheritance tax. There is no dispute in the facts. The circuit court concluded as a matter of fact that these gifts were not made in contemplation of death in the sense of the inheritance tax law. I am

wholly unable to discover any uncertainty as to what the ultimate facts in the case are. There is no dispute in the evidentiary facts, and from their nature and significance they leave, to my mind, no room for drawing different conclusions. In view of this state of the case the question raised is purely one of law, and the circuit court's opinion of the facts cannot control this court in applying the law to these undisputed facts. The county court and the circuit court had the identical question for determination on the same evidence. The same proposition is presented here, and hence the question for review here, in my judgment, is whether or not the circuit court applied the correct principle of law to the undisputed facts.

Do the acts of decedent constitute a transfer of his property "in contemplation of his death" in the sense these words are used in the statute? As stated in the court's opinion these words were interpreted in the *Pabst Case (State v. Pabst,* 139 Wis. 561, 121 N. W. 351) as referring "to an expectation of death which arises from such a bodily or mental condition as prompts persons to dispose of their property, and bestow it on those whom they regard as entitled to their bounty." It was there also considered that a gift is deemed to be in contemplation of the event of death when it is made in expectation of it. To my mind, the facts and circumstances of this case clearly indicate that Mr. Dessert, from old age, was in that bodily and mental state which made him conscious of the fact that his demise must occur in the near future as an unavoidable event pursuant to Nature's immutable laws. I think it is the general experience that such conditions impress men with a greater certainty of impending death than do the afflictions of illness. I am unable to escape the conviction that the fact of impending death from old age, under the circumstances shown in this case, actuated Mr. Dessert in making these gifts.

Does it appear that he acted upon this expectation or not? What more conclusive proof can there be that he acted in view thereof than that he gave the great bulk of his estate to his daughter as he had planned by his will? There is no proof indicating that he gave these sums as remuneration for some obligation he was under to her or her husband, nor is there anything to show he did so in compliance with a plan that he had tested her and his qualifications and worthiness of having such gifts bestowed on them. On the contrary, the acts of transfer are in harmony with and fulfil his express intention declared in the will to bestow his property on those whom he regarded as entitled to inherit it. To my mind, all the facts and circumstances point to the one conclusion, namely, that decedent by reason of his extreme old age undoubtedly lived in the thought of expectant death and was thereby prompted to transfer his property to those on whom he expected to bestow it under the rules for the devolution of property, and that the gifts were in the nature of a testamentary disposition and hence were subject to an inheritance tax as declared by the county court.