## BEQUEST FOR AN ANNEX TO A CHURCH EXEMPT FROM INHERITANCE TAX.

Common Pleas Court of Williams County.

IN RE ESTATE OF JOHN R. WEBER; PROCEEDING TO DETERMINE INHERITANCE TAX.

TRUSTEES OF THE FIRST METHODIST EPISCOPAL CHURCH OF BRYAN, O., APPELEE v. STATE OF OHIO, RESPONDENT.

Decided, 1921.

*Taxation—Burden of Proof in an Inheritance Tax Proceeding—Gift to Promote Physical and Religious Training for Young People— For the Purpose only of Public Charity.*

1. In an inheritance tax proceeding the burden of proof is on the state to show that a gift was made in contemplation of death.

2. In an inheritance tax proceeding the burden of proof is on the state to show that a gift was intended to take effect in possession or enjoyment at the death of the donor.

3. A gift to the trustees of a church of a sum of money "to be used for the construction, equipping, maintaining and repairing a physical training and religious educational annex—to be used for the physical and religious training of the young people of said church, and for the young people in the vicinity of Bryan—and to be used as the home of the Boy Scout Organization of Bryan" is a gift to or for the use of an institution for purposes only of public charity carried on within the state, and is exempt from the inheritance tax.

*Affirmed without opinion by the Court of Appeals, October 22, 1921. Rehearing refused in the Court of Appeals, November 9, 1921. No motion to certify record filed in the Supreme Court.

*D. A. Webster* and *Chas. T. Stahl,* for the Trustees of the First Methodist Episcopal Church of Bryan,

*Howe H. DeMuth,* Prosecuting Attorney, and *Frank J. Murray,* for the State of Ohio.

NEWCOMER, J.

An application to determine the inheritance tax on the estate of John R. Weber was filed in the Probate Court. Mr. Weber

had entered into a contract with the trustees of the First Methodist Episcopal Church of Bryan, Ohio, as follows:

"This day John R. Weber has assigned, transferred, delivered and set over and by these presents does hereby assign, transfer, deliver and set over to the trustees of the First Methodist Episcopal Church at Bryan, Ohio, Liberty Bonds of the issue and amount as follows:    One Thousand (1,000.00) Dollars of the Third Issue, Fifteen Hundred (1,500) Dollars of the Fourth Issue, Twenty-five Hundred (2,500.00) Dollars Victory Bonds, Fifth Issue, the same to be the sole property of the said First Methodist Episcopal Church of Bryan, Ohio, and the said trustees do hereby accept said Bonds as a gift from the said John R. Weber, to be known as the John R. Weber building fund, and to be used for the construction, equipping, maintaining and repairing a physical training and religious educational annex to the present church building, or in case the trustees of said church should determine to build a new church building, then in that event said amount is to be used in the building of said new church building and in the equipping of a physical training and religious educational annex.    Said annex is to be known as the Charles Arnold Memorial and be used for the physical and religious training of the young people of said Church, and for the young people of the vicinity of Bryan.

"The said First Methodist Episcopal Church in the use of said principal sum, for the purpose above designated, is to subscribe and to pay into the said building fund double the amount of the principal sum to be used.

"It is the request and desire of the said John R. Weber that said annex be so constructed and so arranged that a part of said annex be used as the home of the Boy Scout organization of Bryan, and for other religious educational purposes of said church.

"The Trustees of said First Methodist Episcopal Church hereby agree to pay, or cause to be paid, to the said John R. Weber on the 30th day of June and December each year hereafter, during the natural life of the said John. R. Weber an amount equal to the interest accruing on said bonds, and the last payment of said interest to be an equal prorated amount for the part of the year at the time of the death of the said John R. Weber.

"Should said principal sum not be used at the time of the death of said John R. Weber, then in that event the interest accruing to said principal sum, until the same is used for the purposes herein mentioned, to be paid into the fund to be known

as the John R. Weber Missionary Fund of the First Methodist Episcopal Church of Bryan, Ohio, and the amount of the interest so accruing and paid into said fund shall be paid by the trustees of said church, for missionary purposes only, and said amount so paid for missionary purposes shall be known as the John R. Weber Missionary Gift, and shall not be credited upon the missionary obligation of· said church nor be used for the purpose of reducing the amount of said church's benevolent obligations.

"IN WITNESS WHEREOF, the said John R. Weber has hereunto set his hand this 31st day of August, A. D. 1920.

G. W. Whyman                    John R. Weber
Viola E. Custar

                  ACCEPTED BY
A. L. Youse                      B. F. Neff
O. L. Kelly                      W. S. Morrow
D. A. Webster                    W. H. Gardner
S. E. Folk                       J. W. Wyandt
Walter T. Gardner

*Trustees of the First Methodist Episcopal Church of Bryan, Ohio."*

The probate court found the value of the bonds given by the contract to be $4,665.20, and found that an inheritance tax should be paid, and fixed the tax on said bonds at $326.56. The trustees of the church filed an appeal bond and the matter was submitted to this court.

The attorneys for the state claim that the bonds mentioned in the contract are within the provisions of the inheritance tax law of Ohio; that this gift was made in contemplation of the death of John R. Weber; that this gift was intended to take effect in possession or enjoyment at the death of John R. Weber, and that this gift is not a gift to a public institution of learning, or to, or for the use of, an institution for the purpose only of public charity.

The attorneys for the trustees contend that the gift was absolute at the date of the contract; that the gift was not made in contemplation of death; and further claim that if the court finds that the gift was either made in contemplation of. death or was intended to take effect in possession or enjoyment at the death of John R. Weber, then that the gift is exempt from·an

inheritance tax for the reason that it is a gift to a public institution of learning, and for the further reason that it is a gift to, or for the use of, an institution for purposes only of public charity carried on within this state.

Evidence was offered on the question as to whether or not the gift was made in contemplation of the death of John R. Weber. The burden of proof to show that the gift was made in contemplation of death is upon the state, and the state should show by a preponderance of the evidence that the motive for the giving of the bonds was the contemplation of death. The general expectation of death entertained by all persons is not sufficient. *In Re Wiemann's Estate,* 179 N.Y.S., 190; *State* v. *Thompson,* 154 Wis. 320, 142 N. W., 647; *Spreckles* v. *State,* 158 Pac., 549; *In Re Mahlstedt's Estate,* 73 N.Y.S. 818, *People* v. *Kelley,* 218 Ill. 509, 75 N.E. 1038.

In the case of *Dessert's estate,* being *State* v. *Thompson,* 154 Wis. 329, 142 N.W. 647, this rule is stated in the syllabus as follows:

"The county and state in proceedings to determine the amount of an inheritance tax payable by the estate of a decedent, have the burden of proving that gifts made by decedent in his lifetime were made in contemplation of death."

The evidence in this case shows that Mr. Weber, for a year or more prior to the making of the gift had been discussing this matter with officers of the church. The court finds that the contract was made in August 1920; that Weber died in January 1921; that he had a cancer; that the preponderance of the evidence does not show that this gift was made in contemplation of death.

The attorneys for the state claim that this gift was made to take effect in possession or enjoyment at the death of John R. Weber. The evidence shows that the bonds were delivered to the trustees. The contract provides that the trustees shall pay to Mr. Weber an amount equal to the interest received on the bonds. The attorneys for the trustees claim that the contract does not create a trust, that Mr. Weber had no interest in the bonds, or the income therefrom, that the trustees were the ab-

solute owners of the bonds, and that Mr. Weber had an independent contract providing for the payment to him of an amount equal to the interest on the bonds. They base their contention upon a statement found in the case, *In Re Estate of Charles W. Cornell,* 170 N.Y. 432, which appears on page 426, and is as follows:

"The agreement of the donee was not to support the donor nor to pay him a specified sum, nor an amount equal to the income or interest realized by the securities, but to pay that income and interest as such."

In the *Cornell case* the court held that the gift was taxable. The statement made in the opinion is *dictum.* By the terms of the agreement the title to the bonds passed to the trustees and Mr. Weber had a contract with the trustees whereby they agreed to pay him a certain amount, being in the nature of an annuity agreement. The benefits received by the trustees and also the benefits received by Mr. Weber from the agreement are the same as if a gift of the bonds had been made and Mr. Weber had reserved the income therefrom. The court will consider the purpose of the transaction and not be controlled by the formality through which it passes to reach the end sought. The court finds that by the terms of the agreement this gift took effect in possession or enjoyment at the death of Mr. Weber, and is within the gifts defined in Section 5332 of the General Code which is in part as follows:

"A tax is hereby levied upon a succession to any property passing in trust or otherwise—when the succession is to property from a resident—by deed—or gift made without a vaulable consideration—intended to take effect in possession or enjoyment at or after such death." *In Re Conwell's Estate,* 5 Pa. Co. Ct. 368; *In Re Garcia's Estate,* 170 N.Y.S. 980; *Reish, administrator* v. *Commonwealth,* 106 Pa. St. 521.

This contract being within the provisions of the third subdivision of Section 5332 of the General Code, the gift is subject to the inheritance tax, unless it is within one of the exceptions mentioned in Section 5334 of the General Code of Ohio.

The contract between Mr. Weber and the trustees of the church provides that the gift of the bonds is for a specific purpose. The court finds that by the terms of the agreement this is not a gift to the church, but is a gift to the trustees of the church in trust for a specific purpose. We are not called upon to determine in this action whether or not a gift to a church is exempt from the provisions of the inheritance tax. The trustees have accepted the gift. If the trustees at some future time should resign or refuse to further carry into effect the terms of this gift, a court on proper showing would appoint trustees for this purpose, or order the carrying out of the terms of the trust.

This gift is not made to the church for church purposes, but is a gift "to be used for the construction, equipping, maintaining and repairing a physical training and religious educational annex to the present church building," and the contract further provides that if a new building should be erected, then this fund should be used for the same purposes, and the contract further provides that this fund is "to be used for the physical and religious training of the young people of said church and for the young people in the vicinity of Bryan," and the contract further provides that it is "to be used as a home of the Boy Scout organization of Bryan," and the contract further provides that this fund is "to be used for other religious educational purposes of said church." On the hearing of this case it was agreed by counsel that the church proposes to raise the amount to be raised by the church so as to make this gift effective: this being shown, the further provisions in the contract providing that the money should be used for missionary purposes is not material on this hearing.

In determining whether or not this fund is taxable, the court will, as heretofore stated, look beneath the surface of the transaction and consider not its form, but its purpose. The fact that this gift is given to the trustees of the church is not controlling, so far as the inheritance tax is concerned. The use to be made of this gift, the purpose for which this gift was made, as set out in the contract controls. This is not a gift to the church,

but it is a gift for the purpose of erecting a separate room for physical training, for religious educational training, and for a home for the Boy Scout organization.

Since the organization of the Northwest Territory, it has been the policy of the territory and of the state of Ohio to encourage education. The Ordinance of 1787, section 14, article 3 provides in part as follows:

"Religion, morality, and knowledge being necessary to good government and the happiness of mankind, schools and the means of education shall forever be encouraged."

This policy to encourage education is shown in the consitution of 1802, article 8, section 3 which is in part as follows:

"But religion, morality, and knowledge being essentially necessary to good government and the happiness of mankind, schools and the means of instruction shall forever be encouraged by legislative provision, not inconsistent with the rights of conscience."

The Constitution of 1851, article 1, section 7 contains a similar provision:

"Religion, morality, and knowledge, however, being essentially to good government, it shall be the duty of the general assembly to pass suitable laws to protect every religious denomination in the peaceable enjoyment of its own mode of public worship, and to encourage schools and the means of instruction."

The Constitution in 1802 did not contain any provision relating to the exemption of property from taxation, but laws were passed exempting from taxation property used for educational or charitable purposes. The Constitution of 1851, article 12, section 2, specifically provides that laws may be passed exempting certain property from taxation, which section is in part as follows:

" * * * but burying grounds, public schoolhouses, houses used exclusively for public worship, institutions of purely public charity * * * public property used exclusively for any public purpose, may by general laws, be exempted from taxation * * * ."

By the amendments of 1912 the wording of this section was changed. Article 12 section 2 as amended in 1912 reads as follows:

" * * * but burying grounds, public schoolhouses, houses used exclusively for public worship, institutions used exclusively for charitable purposes, public property used exclusively for any public purpose may, by general laws, be exempted from taxation."

The provision of the Constitution providing for an inheritance tax is article 12, section 7, and is as follows:

"Laws may be passed providing for the taxation of the right to receive, or to succeed to, estate, * * * and a portion of each estate not exceeding twenty thousand dollars may be exempt from such taxation."

The provisions of the Constitution which provide for exemption of property from taxation, being article 12, section 2 grants to the Legislature the power to exempt certain property from tax ation. The Legislature from time to time has enacted laws exempting from taxation certain property. The uniform policy in the state has been to exempt from taxation property used exclusively for public charity or for education. The law exempting property of charitable institutions from general taxation, 5353 of the General Code, is in part as follows:

" * * * and property belonging to institutions of public charity only shall be exempt from taxation."

The clause in the inheritance tax law exempting successions to property from taxation, 5334, G. C. is in part as follows:

"The succession to any property passing to or for the use of * * * public institutions of learning, or to or for the use of an institution for purposes only of public charity carried on in whole or in substantial part within this state shall not be subject to the provisions of the preceding sections of this subdivision of this chapter."

The provisions of Section 5334 exempting the succession to

property passing to a charitable institution, is substantially
the same as the wording of Section 5353, exempting the property
of charitable institutions from the general taxes.    That part
of Section 5334 relating to the exemption of charitable institu-
tions from the succession tax is as follows:

" * * * or to or for the use of an institution for purposes
only of public charity * * * shall not be subject * * * ."

That part of Section 5353 relating to the exemption from
general taxes, is as follows:

" * * * and property belonging to institutions of public
charity only, shall be exempt from taxation."

The words "institution for purposes only of public charity"
in the one statute should have the same interpretation as the
words "institutions of public charity only" in another statute;
and the same interpretation as the words "institutions used
exclusively for charitable purposes" in the constitution.

This annex when built and equipped is clearly exempt from
general taxes, as shown by the repeated decisions of the courts
of this state.    This fund, now in the hands of the trustees, being
exempt under Section 5353, and the annex when built and
equipped being exempt under 5353, why should not this money
also be held exempt in passing to the trustees under another
statute which uses similar words in fixing the exemptions?    If
this is an institution for public charity when erected, the funds
for erecting and equipping the institution are funds given to
an institution for public charity.

The question as to what is a public charity has been discussed
by the courts of Ohio in a number of cases.    The policy of the
state is shown in the decisions holding that property to be used
for a public charity is exempt.    A leading case in Ohio is *Gerke*
v. *Purcell*, 25, O.S., 229.    In that case the court held:

"A charity, in a legal sense, includes not only gifts for the
benefit of the poor, but endowments for the advancement of
learning, or institutions for the encouragement of science and
art, without any particular reference to the poor."

In the case of *Gymnasium* v. *Edmondson,* 13 O.N.P., (N.S.), 489, the syllabus is as follows:

"1. The words 'public charity only' as used in Section 5353 of the General Code, must of necessity be given the same meaning as the words 'purely public charity' as used in the same connection in the state Constitution and in the sixth paragraph of Section 2732, Revised Statutes.

"2. Where property is used for purely public charity the form or name or character of the organization controlling it is without importance and can in no way effect the question of its taxability."

The statutes of Pennsylvania relating to exemptions are similar to the Ohio statutes. Chief Justice Nichols in discussing the exemption statute in the case of *Rose Institute* v. *Myers,* 92 O.S., 252, on page 262, comments as follows on Pennsylvania cases under the exemption statutes,

"The most thoughtful and best reasoned of the cases outside of our immediate jurisdiction are to be found in Pennsylvania and Georgia, in both of which statutes the constitutional limitations on the subject of exemption from taxation are alike with ours, word for word."

In the case of *Bird Orphan Asylum* v. *School District,* 90 Pa. St., 21, the syllabus is as follows:

"Testatrix by her will provided for the establishment of an asylum, whose object should be the maintenance and education of white female orphan children, of not less than four years or more than eight; first, who shall have been baptized in the Protestant Episcopal Church, in the city of Philadelphia; second, the same class of children baptized in said church, in the state of Pennsylvania; third, all other white female orphan children, between the said years, without respect to any other description or qualification whatever, except that at all times, and in every case the orphan children of clergymen of the Protestant Episcopal Church shall have the preference. The will contained further directions, that the form or worship and instruction should be that observed and taught in the Episcopal Church, and appointed the bishop of said church and his successors the perpetual visitor.

"*Held,* that, the asylum is a 'purely public charity' within

the meaning of section 1, article 9 of the constitution, which
provides that the legislature may exempt from taxation insti-
tutions of purely public charity, and that said institution was
within the letter of the Act of May 14th, 1874, and therefore
exempt from taxation.''

In the case of *Carter* v. *Whitcomb*, 69 Atl,. 779, in the opinion
the court says:

'' * * * But it is urged that the various associations which
the testatrix sought to benefit by her legacies are not 'char-
itable, educational or religious societies or institutions,' within
the meaning of the statute. In view of what has already been
decided in this opinion, it is plain that if they are charitable
in their nature and objects, so that their property devoted ex-
clusively to those objects is not taxable under section 1 c. 66 p.
426, Laws 1895, the legacies in question are not subject to the
inheritance tax. By that statute it is provided that 'so much
of the real estate and personal property of charitable associations,
corporations, and societies as is devoted exclusively to the uses
and purposes of public charity' is 'hereby exempted from tax-
ation.' The question is: Are these associations formed and
conducted for the purpose of promoting public charities? If
they are, it will be unnecessary to inquire whether all or any
of them might claim the benefit of the exemption on some other
ground; for it is not doubted that the statute of 1895 was in-
tended to exempt public charitable bodies, as defined in the law,
whether incorporated or not, from taxation upon their property
devoted to public charity. 'Charitable trusts include all gifts
in trust for religious and educational purposes in their ever-
varying diversity; all gifts for the relief and comfort of the
poor, the sick, and the afflicted; and all gifts for the public
convenience, benefit, utility, or ornament in whatever manner the
donors desire to have them applied.' 2 Per. Tr. 687.

''In *Webster* v. *Sughrow*, 60 N.H., 380, 45 Atl., 139, 48 L.R.A.,
100, it was held that the provision in a will that the residue
of the testator's estate shall be held by his executor, and expended
at his discretion for the saying of masses for certain persons,
is a valid bequest to a charitable use; and the court quote with
approval the following language from the opinion in *Jackson* v.
*Phillips* 14, Allan (Mass.) 539, 558:

'' 'A charity, in the legal sense, may be defined as a gift
to be applied, consistently with existing law, for the benefit of
an indefinite number of persons, either by bringing their minds

or hearts under the influence of education or religion, by re-
lieving their bodies from disease, suffering, or constraint, by
assisting them to·establish themeslves in life, or by erecting or
maintaining public buildings or works, or otherwise lessening
the burdens of government'."

The gift made by John R. Weber is a charitable gift.  It is
made for the use and benefit of the young people of the First
Methodist Episcopal Church of Bryan, Ohio, and for the use
and benefit of the young people of the vicinity of Bryan.  The
beneficiary of this charitable gift is not the church, and is not
the board of trustees of the church, but the beneficiaries are
the young people of the church and the vicinity of Bryan.  The
money to be raised by the church to be added to this fund, is
equally a charitable fund separate and apart from the general
church organization.  Charitable gifts have been defined in many
cases.  *Dunham* v. *Kauffman*, 10 O.N.P. (N.S.), 20 O.D., 274;
*Rockwell* v. *Blandy*, 9 O.N.P., (N.S.), 495; 22 O.D., 107; *German
Reformed Church* v. *Weikel* 7 O.N.P. (N.S.), 377, 19 O.D.,231;
*State of Louisiana et al.* v. *Executors of John McDonogh and
the City of New Orleans*, 8 La., 246; *Jackson* v *Phillips et al*, 14
*Allen* 556; *Price et al* v. *Maxwell et al*, 28 Penn. 35.

The gift made by John R. Weber is not a gift to the church,
and is not a gift made to the trustees of the church for church
purposes, but is a gift made to the trustees of the church in
trust for the uses defined in the contract.  The trustees of the
church can hold this fund for the uses mentioned in the con-
tract the same as an incorporated institution could hold the
funds, and the trustees will hold the money to be raised by the
church for the purposes mentioned in this contract, the same
as they hold this fund.  If the trustees of the church should
attempt to divert the fund to some other purpose a court of·
equity would see that the trust provided for in the agreement
was carried out.  From the fact that the trustees of the church,
or the church, is named in the contract, it does not follow that
the gift is to the church.  In many cases the gift is made to
some person, institution, or corporation as trustee in trust for
purposes separate and apart from the general purposes of the

trustee. In many cases the courts have discussed the rights of the beneficiaries under the trust separate and apart from the general rights and duties of the organization which may have control of the funds. *Rockwell* v. *Blaney*, 9 O.N.P., 495, 22 O.D., 107; *Christy* v. *Commissioners*, 41 O.S., 711; *In Re Foss' Estate*, 196 Pac., 10; *Chaplan* v. *School District*, 3 O.D. Rep., 521; *In Re Carl's Estate*, 187 N.Y.S., 246; *Inhabitants of Town of Essex* v. *Brooks*, 41 N.E., 119; *In Re Spangler's Estate*, 127 N.W., 625.

The court finds that this provision in the contract is a provision to, or for the use of, an institution for the purposes only of public charity carried on within the state of Ohio, and that by reason thereof this gift is exempt from the inheritance tax.

The money in the hands of the trustees of the church and the building or annex which may be built with this money, are clearly exempt under Section 5352, G. C. It is money belonging to an institution of public charity only. This property in the hands of the trustees, being clearly exempt from taxation the wording of the two statutes being substantially the same, and the policy of our laws from the Ordinance of 1787 to the present time being to encourage education, we think that this gift is clearly within the exemption of the inheritance laws.

Similar questions have been discussed in other states; *Webster* v. *Sughrow*, 45 Atl., 139; *Trustees* v. *Taylor*, 25 Atl., 55; *In Re Spangler's Estate*, 127 N.W., 625; *In Re Foss' Estate*, 196 Pac., 10; *In Re Graves' Estate* 63 N. E., 787; *Inhabitants of the Town of Essex* v. *Brooks*, 41 N.E., 119; *In Re Moses' Estate*, 123 N.Y.S., 443; *In Re Allen's Estate*, 136 N.Y.S., 327; *In Re Higgin's Estate*, 106 N.Y.S., 464; *In Re Howle's Estate*, 69 N.Y.S., 505.

The gift by John R. Weber to the trustees is exempt from an inheritance tax.