[No. 25710. Department Two. February 7, 1936.]

*In the Matter of the Estate of* LAURA BROOKES,
*Deceased.*

ROLLIN SANFORD, *as Executor, Respondent,* v.
WILLIAM H. PEMBERTON, *as Supervisor of
the State Inheritance Tax and Escheat
Division, Appellant.*[1]

*William H. Pemberton* and *Lyle K. Summers,* for
appellant.

*Smith & Matthews* and *Arthur P. Redman,* for respondent.

HOLCOMB, J.—Laura Brookes died testate a resident of King county, Washington, on September 15, 1932, leaving an estate in King county subject to administration of the appraised value of $114,395.24. She was almost eighty-six years of age at the time

[1]Reported in 52 P. (2d) 307.

of her death. About six or eight months before her death, the doctor had treated her for a slight bladder trouble, from which she had fully recovered.

On December 24, 1931, she made a Christmas gift of property consisting of bonds of the value of $16,800, the donees being a daughter, her son-in-law, Reverend Arney, and the Archbishop of Manila, apparently for a religious or charitable purpose. On June 8, 1932, she made a second transfer of property valued at $9,600, principally for the benefit of Jessie Arney.

The inheritance tax already paid to the state amounts to $2,657.15. The Federal government investigated the estate and made no claim to any inheritance tax upon the gifts above mentioned.

. At the time both gifts were made and at all times between the dates of transfer, Mrs. Brookes was in full possession of her faculties, actively alert, mentally and physically, being as alert mentally and physically as might be expected of a woman many years her junior. There was no intimation from her at any time that she contemplated death. She took care of her household, did the cooking for herself, and attended an invalid sister until she died, whose face was being eaten away by cancer, without any help except that rendered by Miss Arney, for as many days or weeks as requested. She was never depressed nor worried or concerned about the condition of her health.

Between the dates of the first and second gifts, her health was excellent. She made it a practice to go down town on the street car and call at the bank to talk over business affairs with her financial and business adviser, frequently going to a "movie." She was interested in traveling, reading, her church and her friends, in current events, and in various institutions, such as the Seattle Children's Home. In 1929, she made a trip to Australia, and after making the second

gift, she made a pleasure trip to California, leaving Seattle about June 13, 1932. After her return from this trip, she expressed the desire to make another trip to California and was also planning to make a trip to Alaska the next year and even contemplating a trip to Europe. Until her last illness, Mrs. Brookes was in excellent health, cheerful and optimistic, leading an active life and making plans far into the future.

The first gift, that of December 24, 1931, was made in order to help the donees, who were in straitened circumstances. She expressed the desire to give them something so that she could enjoy seeing them have it and use it. She stated to Miss Arney that she wanted to help Mr. Baxter, who was not well, and Reverend Arney, who was in need of money. There was no other motive than this for making the gift.

The second gift, that of June 8, 1932, was undoubtedly made to Miss Arney for the valuable services she had rendered to Mrs. Brookes during the later years of the latter's life. The task of caring for the invalid sister of Mrs. Brookes was not only trying, but nauseating, because of the diseased condition of her face. There was, therefore, an impelling motive for decedent to make some compensation to Miss Arney, as a moral obligation.

The entire record in this case has been read. The foregoing facts were established by positive, unimpeached and uncontradicted evidence. No witnesses were called by appellant to rebut any of it.

■ Respondent relies upon Rem. Rev. Stat., §§ 11201 and 11201-a [P. C. §§ 7051, 7051-1], quoted and construed by us in the very recent cases of *In re Carvill's Estate*, 181 Wash. 627, 44 P. (2d) 768, and *In re Culver's Estate*, *ante* p. 54, 53 P. (2d) 302.

Again we agree with appellant that, as stated in the

*Culver* case, *supra,* the question of whether a gift is made in contemplation of death is usually one of fact.

The question of fact has been decided adversely upon uncontroverted evidence by the trial court against appellant. This case is controlled by our decisions in the two above-cited cases and the cases therein cited and relied upon.

Even one of the cases relied upon by appellant therein and in this case, *United States v. Wells,* 283 U. S. 102, 51 S. Ct. 446, does not sustain the contention of appellant. In that case, the donor died at the age of seventy-three years, having made gifts within two years of his death.

Among other things the court there said:

"Old age may give premonitions and promptings independent of mortal disease. Yet age in itself cannot be regarded as furnishing a decisive test, for sound health and purposes associated with life, rather than with death, may motivate the transfer. The words 'in contemplation of death' mean that the thought of death is the impelling cause of the transfer, . . ."

In quoting from the opinion by the court of claims, it also said:

"The presumption created by the statute that the transfers in question were made in contemplation of death can not stand against ascertained and proven facts showing the contrary to be true. The best evidence of the state of the decedent's health at the time the transfers were made is the statement of his doctor. The best evidence of the decedent's state of mind at that time and the reasons actuating him in making the transfers are the statements and expressions of the decedent himself, supported as such statements are by all the circumstances concerning the transfers."

And further, which applies to this case:

"There may be the desire to recognize special needs or exigencies or to discharge moral obligations. The gratification of such desires may be a more compelling

motive than any thought of death. . . . Not only was there no fear at the time of the transfers that death was near at hand, but the motive for the transfers brought them within the category of those which, as described by the Government, are intended by the donor 'to accomplish some purpose desirable to him if he continues to live.' "

In addition to the cases cited in the *Culver* case, *supra,* in *In re Dessert's Estate,* 154 Wis. 320, 142 N. W. 647, 46 L. R. A. (N. S.) 790, Ann. Cas. 1915B 1084, a gift by a donor to an only child and her husband, when he was eighty-six years of age and in good health at the time he made the gift because he desired to retire from active life and because the gift would afford him pleasure, was held to be a gift not made in contemplation of death.

The uncontradicted evidence shows that the questioned gifts were made to accomplish proper desires of the donor and not made in contemplation of death. The burden of proof of showing that they were not made in contemplation of death, although made within two years prior to the decease of the donor, was fully sustained by evidence that was competent and conclusive.

The judgment is affirmed.

TOLMAN, MAIN, BEALS, and BLAKE, JJ., concur.